# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| DENNIS AND MELISSA EGGERLING, both Individually and as parents and guardians for A.E., their daughter and a minor, | |
| Plaintiffs, | No. C11-4104-MWB |
| vs. | **ORDER** |
| ADVANCED BIONICS, LLC, | |
| Defendant. | |

This case is before me on plaintiffs' motion (Doc. No. 33) to de-designate certain documents defendant has designated as "confidential" pursuant to the protective order (Doc. No. 18) in this case. Defendant has filed a resistance (Doc. No. 35) and plaintiffs have filed a reply (Doc. No. 36). No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* Local Rule 7(c). The motion is fully submitted.

## *BACKGROUND*

This is a product liability case. Plaintiffs filed this action on November 28, 2011, on behalf of themselves and their minor daughter, "A.E." Their complaint (Doc. No. 1) alleges that A.E. suffered permanent hearing loss and was forced to undergo open-head surgery due to an allegedly-defective medical device supplied by defendant Advanced Bionics, LLC ("Advanced"). That device, a Bionics HiRes 90k cochlear implant, is allegedly designed "to enable profoundly deaf persons to 'hear' by directly stimulating auditory nerves leading to the brain by means of an electrode array strategically positioned in the cochlea of the inner ear." Doc. No. 1 at ¶10. Plaintiffs

assert six causes of action against Advanced and seek awards of actual and punitive damages.

Advanced filed its answer (Doc. No. 6) on February 10, 2012. In general, the answer denies liability and asserts twenty-seven separate affirmative defenses. On May 15, 2012, Advanced filed a motion for entry of protective order and submitted a proposed order. Doc. Nos. 12 and 12-2. Plaintiffs filed a response on May 29, 2012, objecting to Advanced's proposed order on grounds, *inter alia,* that its "proposed criteria and categories for confidential information are overbroad, permitting *carte blanche* designations." Doc. No. 16 at 4. Plaintiffs submitted their own, alternative proposed order. Doc. No. 16-1. My predecessor, the Honorable Paul A. Zoss, ultimately determined that it was appropriate to adopt Advanced's proposed order. Doc. No. 17. However, Judge Zoss cautioned Advanced that it would be subject to sanctions "if it designates materials as confidential on grounds that are unsustainable, frivolous, or in bad faith." Doc No. 17 at 2. Advanced's proposed order was entered as the protective order for this case on May 31, 2012. Doc. No. 18.

The order states, among other things, that materials produced during this action may be designated for protection "if, in good faith, the designating person reasonably believes that such material is or contains proprietary, trade secret or otherwise confidential information." Doc. No. 18 at ¶ 1. Materials may be designated as either "confidential" or "attorney's eyes only," with each designation having its own set of restrictions. *Id.* ¶¶ 2-5. The order sets forth the following procedure for challenging a particular designation:

> If a party contends that any document or material has been erroneously or improperly designated as Confidential or Attorneys' Eyes Only, that party shall notify the designating party in writing of its objection and the basis for the objection. The designating party shall then have 20 days from receipt of the written objection to respond to the objecting party and to arrange for a meet and confer. After any meet and confer, a party may file a motion to

resolve any dispute. The party asserting the Confidential or Attorneys' Eyes Only designation will bear the burden of proving such protection is warranted. Pending any court ruling, the provisions of this Protective Order shall apply and disclosure and use of the challenged documents or information shall not be made except as provided under this Protective Order.

Doc. No. 18 at ¶ 20.

## *THE PRESENT DISPUTE*

On June 18, 2012, plaintiffs objected in writing to Advanced's designation of 52 documents. Doc. No. 35-2. Advanced responded on July 8, 2012, agreeing to withdraw the designation for 12 of the documents and to redact certain technical information and produce a non-confidential version of another six documents. Doc. No. 35-3. After additional discussions, Advanced agreed on August 6, 2012, to withdraw the designation, either partially or completely, for three additional documents. Doc. No. 35-4. According to Advanced, no further discussions about its designations occurred between that date and plaintiffs' filing of their present motion six months later.

In their moving papers, plaintiffs state at various points that they are challenging the "confidential" designation of five, six or seven documents. Doc. No. 33 at ¶¶ 1, 4; Doc. No. 33-1 at 1. I assume the correct number is six, as plaintiffs attached six documents to their motion. Doc. Nos. 33-4 through 33-9 (marked by plaintiffs as Exhibits B through G). Advanced states that two of those six documents, marked as Exhibits E and F, were not included on plaintiffs' June 18, 2012, list of objections pursuant to paragraph 20 of the protective order. As such, according to Advanced, those documents are not properly part of the current motion.

Based on my review of the documents, and the parties' correspondence, I agree with Advanced concerning Exhibits E and F. Paragraph 20 provides a clear, precise process for informal resolution of disputes concerning the designation of materials. It is

3

consistent with our local rules, which require good faith efforts to resolve discovery disputes informally before presenting them to the court. *See* Local Rule 37. Before filing their motion, plaintiffs did not comply with paragraph 20 or Local Rule 37 with regard to Exhibits E and F (filed as Doc. Nos. 33-7 and 33-8). As such, those two documents are not properly before me. My review will be limited to Exhibits B, C, D and G.[1]

## *ANALYSIS*

Federal Rule of Civil Procedure 26(c)(1)(G) permits a court to enter protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." This express language makes it clear that the permissible scope of such an order is not limited to trade secrets, but may include "other confidential . . . information." This is important, as the term "trade secret" has a precise and narrow legal definition. To qualify as a trade secret, information must not only be confidential, but also must derive "independent economic value" by virtue of its confidential nature. *See, e.g.,* Uniform Trade Secrets Act § 1.4.[2] Thus, trade secrets are a subset of confidential information. Information may be

---

[1] Three weeks after plaintiffs filed their motion, Advanced advised plaintiffs' counsel that it would agree to de-designate Exhibit F but not Exhibit E. *See* Doc. No. 36-1. The fact that Advanced has now advised plaintiffs of its position concerning those documents does not excuse plaintiffs' failure to comply with this court's order and rules before filing the motion.

[2] According to Section 1.4: "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

confidential, in the sense of not being publicly available, while not meeting the legal definition of "trade secret."

>The Supreme Court has explained the purpose of Rule 26(c) as follows:
>
>Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression . . . . Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.
>
>There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34-35 (1984) [citations and footnotes omitted]. Of course, by making reference to harm that would occur "if" information is "publicly released," this quotation presupposes that the information is not otherwise publicly available. In other words, the fact that information may be embarrassing, or harmful to a party's reputation, does not automatically justify protection under Rule 26(c). The information must, as a threshold matter, be confidential.

While this is plaintiffs' motion, Advanced plainly has the burden of showing that the designated materials are entitled to protection. This burden is allocated to Advanced by the protective order itself, which Advanced drafted, and by common law. *See* Doc. No. 18 at ¶ 20; *see also, e.g., Insulate America v. Masco Corp.*, 227 F.R.D. 427, 432

(W.D.N.C. 2005); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307-08 (N.D. Cal. 2005). Advanced does not contend otherwise. Instead, it contends that it has met this burden.[3] It references the declaration of Cedric Navarro, one of its Vice Presidents, concerning the confidentiality of its internal documents and the potential harm that could result from their public disclosure. Doc. No. 35-8. It also makes specific arguments concerning each of the four documents at issue. I will address each separately.[4]

### *Exhibit B (AB_E_ADAIR_0018355 to 385)*

Exhibit B is an 18-page PowerPoint presentation entitled "R&D to Manufacturing Transition Proposal." Doc. No. 33-4. Based on my review of the document, and the Navarro declaration, I find that this document contains detailed information about manufacturing processes, budgeting and finance issues, testing and other matters that would not generally be released for public consumption. As noted above, I need not determine whether this information meets the legal definition of "trade secrets." Instead, I find that Advanced has shown that the information is of a confidential nature and that Advanced, merely by virtue of being sued, should not be required to endure the public disclosure of the information. *Rhinehart,* 467 U.S. at 35.

---

[3] In their reply, plaintiffs rely heavily on the Eighth Circuit's recent decision in *IDT Corp. v. eBay, Inc.*, No. 11-3009, 2013 WL 490751 (8th Cir. Feb. 11, 2013). That case addressed the public's right to access judicial records and, in particular, an antitrust complaint. *Id.* at *1. There is a significant difference between pleadings filed with the Clerk and business records produced in the course of discovery. In fact, the court noted that pleadings in civil cases are "presumptively public" *except for* "discovery motions and accompanying exhibits." *Id.* at * 2. Even with regard to pleadings, the court recognized a party's right to have confidential and sensitive information redacted. *Id.* at *4.

[4] Each side wastes space with entirely-irrelevant speculation about the other's motives in either designating documents as confidential or seeking to remove those designations. If it becomes necessary for either side to file further discovery motions (and from what I've seen so far, that's a safe bet), I order the parties to limit their arguments to discussions of the relevant facts and applicable law. I will strike filings and/or assess monetary sanctions if the parties violate this order.

*Exhibit C   (AB074404 to 05)*

This document is a two-page memorandum from Bernard Malinowski to the "Hermeticity Task Team File," with copies to various individuals. Doc. No. 33-5. It is entitled "Report – Material selection for feedthru and its components." Advanced notes that the Honorable Charmiane Claxton of the United States District Court for the Western District of Tennessee previously reviewed this document and determined that it should be treated as "confidential in its entirety" under a protective order in a case pending in that district. Doc. No. 35-5 at ¶ 11. While I am not bound by that ruling, my review of the document leads me to concur. The document contains a discussion of materials used in Advanced's products and their components, a technical analysis of the materials and potential modifications to both the materials and the design of the components. According to Advanced, the document was submitted to a group of engineers and scientists within the company. I have no information suggesting that Advanced has voluntarily disclosed this document to the public. Advanced has met its burden of showing that Exhibit C should continue to be designated "confidential" pursuant to the protective order.

*Exhibit D   (BSC-Purchase 09016 to 20)*

This is a presentation that discusses Advanced's "QA" (quality assurance) strategies. Doc. No. 33-6. The various slides contain a seemingly-candid assessment of strengths, problems, goals and possible changes. I have no reason to believe that Exhibit D is a document that Advanced would typically disclose to the public. As such, I agree with Advanced that the document "constitutes confidential development and business information" such that it is eligible for continued protection.

*Exhibit G   (AB_E_MORLEY_0000455)*

This document consists of an email message with the subject: "Hermeticity Of Our Devices." Doc. No. 33-9. Advanced states that the message was written by one Advanced employee and directed to two other employees. The author expresses some frank frustrations and concerns. As with Exhibit C, Judge Claxton reviewed this document in the Tennessee litigation and found it to be "confidential in its entirety." Doc. No. 35-5 at ¶ 9. Again, I agree with Judge Claxton. Advanced has met its burden of showing that it is eligible for designation as a "confidential" document for purposes of the protective order.

## *CONCLUSION*

This case is still in the discovery stage. Plaintiffs are not being deprived of the disputed information – they already have it and can use it as they see fit for purposes of this action. If any of the documents discussed above are admitted into evidence at trial, the issues concerning public access will be far different. At this time, however, I find that Advanced has made a sufficient showing to justify the continued designation of Exhibits B, C, D and G as "confidential" pursuant to the protective order. Further, as noted above, Exhibits E and F are not properly before me because plaintiffs failed to comply with paragraph 20 of the protective order and Local Rule 37 with regard to those documents. As such, plaintiffs' motion (Doc. No. 33) is **denied** in its entirety.

**IT IS SO ORDERED.**

**DATED** this 6th day of March, 2013.

                                                _____
                                                LEONARD T. STRAND
                                                UNITED STATES MAGISTRATE JUDGE
                                                NORTHERN DISTRICT OF IOWA